IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GARY LAMON PUGH                                                                              PLAINTIFF

v.                                       Civil No. 06-5114

SHERIFF TIM HELDER                                                                       DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On August 29, 2006, a motion to dismiss was filed by the defendant (Doc. 10). By order entered on October 18, 2006, the plaintiff, Gary Pugh, was directed to complete, sign, and return a questionnaire that would serve as his response to the motion to dismiss (Doc. 13).

Plaintiff responded to the motion to dismiss on November 17, 2006 (Doc. 15). The motion to dismiss is before the undersigned for issuance of this report and recommendation.

### BACKGROUND

According to the allegations of the complaint, on May 11, 2006, Gary Lamon Pugh slipped and fell as he "departing the showers." *Complaint* at page 4. Pugh alleges the slip and fall was the result of "worn out flippers and the excessive overflow of water into the common area." *Id.* Pugh alleges the area had become a hazard. *Id.* He asserts nothing was done "after several warnings." Pugh alleges the fall caused severe injuries to his back. *Id.*

Pugh was incarcerated at the Washington County Detention Center (WCDC) from April 28, 2006, through July 21, 2006. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He was incarcerated solely because of pending criminal charges. *Id.* at ¶ 2.

-1-

AO72A
(Rev. 8/82)

Pugh did not speak to, or communicate with, Sheriff Helder regarding his slip and fall. *Resp.* at ¶ 3(A). However, prior to his fall, Pugh states he had made verbal complaints about the slippers and the overflow of water into the common area. *Id.* at ¶ 3(B). Pugh states he was told his slippers would be replaced and that there was nothing that could be done about the showers. *Id.*

Pugh was asked whether there were other individuals at the WCDC who he contended violated his constitutional rights in connection with his slip and fall. *Resp.* at ¶ 3(C). He responded: "No." *Id.*

Pugh was asked whether a custom or policy of Sheriff Helder or Washington County in any way caused his fall. *Resp.* at ¶ 3(D). He responded as follows: "No. It was just one of those situations where worn out slippers and an overflow of water in the common area lead to my slip and fall. I was told the facility was having problem with the showers at the facility." *Id.*

Pugh indicates that from the time he became incarcerated at the WCDC, on April 28th, he thought there was a problem with the water overflow. *Resp.* at ¶ 4. He would try to take a shower when there were not many other inmates showering but sometimes he indicates that was not possible. *Id.*

Pugh indicates his slippers were so worn that the middle was cracked all the way across from the big toe to the little toe. *Resp.* at ¶ 5. As a result, the sole would fold under all the way. *Id.*

Prior to his fall, Pugh does not know if any other inmates fell in the shower area. *Resp.* at ¶ 6. However, he did see several people slip and almost fall during his incarceration at the WCDC. *Id.* He does not know of anyone else who fell. *Id.*

Pugh indicates that what happened was a freak accident. *Resp.* at page 9. However, he asserts he was in no pain before his incarceration but due to the slip and fall he now has severe back pain. *Id.* Because of the lack of proper medical attention and the fall, Pugh states he has been told fluid has developed in the facet joint at the L4-L5 disc. *Resp.* at ¶ 7.

Pugh believes the WCDC should have been responsible for his medical bills and he should have had better follow-up medical treatment after the fall. *Resp.* at page 9. Pugh asserts they were told if his back pain continued an MRI (magnetic resonance imaging) should be done but they would not schedule one. *Id.*

Pugh has attached to his response to the motion to dismiss copies of a number of grievances, witness statements, and a handwritten log he kept regarding his care following the fall. The documents indicate, among other things, that Pugh was seen by the facility doctor, Dr. Howard, and did not believe he was receiving adequate medical care for his injuries.

## DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). Mere negligence will not suffice to state a claim for deprivation

AO72A
(Rev. 8/82)

of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

As noted above, Pugh was a pretrial detainee. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382

F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Revels,* 382 F.3d at 875.

The Supreme Court has stated that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  However, "[c]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need."  *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)(*citing Wilson*, 501 U.S. at 304).  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

In this case, there is simply no basis on which Sheriff Helder can be held liable.  Pugh did not speak to, or communicate with, Sheriff Helder regarding his slip and fall.  *Resp.* at ¶ 3(B).  Pugh does not contend a custom or policy of Sheriff Helder or Washington County in any way caused his fall.  *Resp.* at ¶ 3(D).

Prior to his fall, Pugh had only made verbal complaints about his slippers and the overflow of water into the common area.  *Resp.* at ¶ 3(B).  He had been told his slippers would be replaced.  *Id.*

Pugh is not aware of any other inmate having fallen in the same area before he fell.  *Resp.* at ¶ 6.  Pugh is not aware of any other inmates falling in the same area after his fall as a result

of the condition although he did see some inmates slip. *Id.* There is simply nothing to suggest the Sheriff Helder failed to act in the face of a risk of harm to the health or safety of the detainees at the WCDC. *See e.g., LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishments")(citation omitted).

"[E]very injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996). While we do not hold that slippery floors in combination with cracked or worn out shoes or slippers can never establish a claim of constitutional dimension, we believe that under the circumstances of this case no claim of constitutional dimension is stated. *See e.g., Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)(inmate was on crutches and fell and injured himself several times--his repeated injuries and unsafe conditions state a claim where slippery floors without protective measures create sufficient danger). There is simply nothing to support a finding that Sheriff Helder failed to maintain a safe area for the detainees or that he was aware there was a substantial risk detainees would fall because of the overflow of water into the common area from the showers and that a fall would cause serious harm. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 110 (8th Cir. 1998)(Plaintiff must prove the officials knew of facts from which they could infer a substantial risk of serious harm existed and that the officials drew that inference).

However, we believe plaintiff's response to the motion to dismiss should be construed as a motion to amend his complaint to assert a claim that he was denied adequate medical care and to add Dr. Howard as a defendant. It is clear from Pugh's response to the motion to dismiss

that he believes the slip and fall was merely an accident but does not believe that he received adequate medical care after his injury in the fall.

## CONCLUSION

I therefore recommend that defendant's motion to dismiss (Doc 10) Sheriff Helder be granted. However, I recommend that the plaintiff's response to the motion to dismiss (Doc. 15) be construed to be a motion to amend the complaint to assert a denial of adequate medical care claim and a request to add Dr. Howard as a defendant.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of January 2007.

/s/ *J. Marschewski*
　HON. JAMES R. MARSCHEWSKI
　UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)